

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1095-12

**THE STATE OF TEXAS**

**v.**

**ANTHONY GRANVILLE, Appellee**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SEVENTH COURT OF APPEALS
WALKER COUNTY**

**KEASLER, J., filed a dissenting opinion.**

## DISSENTING OPINION

This case asks us to decide whether Granville retained a reasonable expectation of privacy in the contents of his cell phone, which was seized by police during booking and stored in a jail property room. The majority holds that he did retain such an expectation, on the basis that the contents of a cell phone deserve heightened protection because a cell phone can "receive, store, and transmit an almost unlimited amount of private information."[1]

---

[1] Majority op. at 12.

However, in reaching its result, the majority ignores the precedent of this court and sidesteps the requirement that an individual manifest a "subjective expectation of privacy" in a space before he has standing to challenge a law enforcement search under the Fourth Amendment.[2] Based on the record before us, Granville did not meet his burden to prove that subjective expectation. I must respectfully dissent.

## APPLICABLE LAW AND ANALYSIS

Under the privacy-based model of the Fourth Amendment set forth by *Katz v. United States*,[3] a search is unreasonable when an individual has a legitimate expectation of privacy in the space being invaded by government agents.[4] A defendant has the burden to prove that a legitimate expectation of privacy existed, and must do so by demonstrating that (1) by his conduct, he exhibited an actual intention to preserve something as private, and (2) this subjective expectation of privacy is one that society is prepared to recognize as reasonable.[5] If a defendant fails to meet this burden, he does not have standing to challenge a search.[6]

Demonstrating a subjective expectation of privacy is not difficult. An individual

---

[2] *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

[3] *Katz v. United States*, 389 U.S. 347, 350–51 (1967).

[4] *Rakas v. Illinois*, 439 U.S. 128, 149 (1978); *Granados v. State*, 85 S.W.3d 217, 222–23 (Tex. Crim. App. 2002).

[5] *Smith*, 442 U.S. at 740; *Oles v. State*, 993 S.W.2d 103, 108 (Tex. Crim. App. 1999).

[6] *Rakas*, 439 U.S. at 143.

simply must, by his conduct, exhibit an "actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private."[7] However, in this case, because the cell phone in question had already been seized from Granville and was in police custody at the time of the search, Granville must overcome a heightened burden, based on the lowered expectation of privacy that accompanies arrest and incarceration.[8] According to our decision in *Oles v. State*, this heightened burden is applied to searches of "personal effects of an arrestee" that have been lawfully seized by police.[9] An individual seeking to challenge a search under these circumstances can only meet their burden by conduct that "*can* and *does* exhibit subjective expectations [of privacy]."[10]

As *Oles* provides the framework upon which the result in this case should be based, an analysis of its facts is helpful. Melvin Oles was arrested pursuant to a warrant issued on a motion to revoke probation, and his clothing was inventoried and stored as part of the booking process.[11] Oles was also a suspect for murder, and eight days after his arrest and without a warrant, an investigator took Oles's clothing to a medical examiner to determine

---

[7] *Bond v. United States*, 529 U.S. 334, 338 (2000) (quoting *Smith*, 442 U.S. at 740).

[8] *Oles*, 993 S.W.2d at 108.

[9] *Id.* at 108 n.7, 110.

[10] *Id.* at 110 (emphasis in original).

[11] *Id.* at 105.

if the clothing held blood traces.[12] Oles challenged this subsequent examination of his clothing as an improper search under the Fourth Amendment.[13]

This Court addressed Oles's claim by determining whether he enjoyed both a subjective and an objective expectation of privacy in his clothing after it had been seized and inventoried.[14] Noting that "[n]o situation imaginable is as alien to the notion of privacy than an arrestee sitting in a jail cell, completely separated from his effects that are lawfully controlled and inventoried by the very police that are investigating him," we concluded that Oles did not subjectively expect privacy in the seized clothing and that society would not recognize an expectation of privacy in seized clothing as legitimate.[15] Our determination was based on the fact that Oles could not point to evidence affirming either a subjective or objective expectation of privacy in the clothing, and thus had not met the heightened burden of proof required to establish an expectation of privacy in items seized and inventoried by police.[16]

This case is factually similar to *Oles* in many respects. There, as here, the personal effects of an arrestee were seized and inventoried by police, and those personal effects were

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 106.

[15] *Id.* at 109.

[16] *Id.* at 110–11.

later searched by law enforcement for evidence unrelated to the crime of arrest. As such, the same burden that was applied to Oles should be required of Granville in this case. Granville can only establish that he retained a reasonable expectation of privacy in the contents of his cell phone by (1) exhibiting affirmative conduct that reflects a subjective expectation of privacy in the contents of the phone; and (2) by establishing that society is prepared to accept that expectation of privacy as reasonable.

Based on the record before us, Granville has failed to meet his burden of establishing an actual, subjective expectation of privacy. As I will discuss below, the majority glosses over the issue of Granville's subjective expectation.[17] However, the court of appeals addressed it in some detail,[18] and justified its finding of a subjective expectation on two grounds. First, according to the trial judge's findings of fact, Granville's "cell phone was off" when Officer Harrell retrieved it from storage, and the office "had to turn it on to manipulate its contents." However, the record is undeveloped as to the circumstances in which the cell phone was turned off. Was the phone off at the time of its seizure, or did Granville himself turn it off contemporaneously with his arrest? Did the arresting officer turn it off of his own accord, or did Granville request the officer to do so? Or was the phone turned off by law enforcement during the booking process, prior to being placed in storage? If law enforcement turned off the phone, was Granville aware that it did so? All that the

---

[17] *See* Majority op. at 9–12.

[18] *Granville*, 373 S.W.3d 218, 224 (Tex. App.—Amarillo 2013).

record reflects is that Harrell had to turn on the phone to access the photograph, and action taken by a law enforcement officer alone cannot constitute affirmative conduct on Granville's part that exhibits a subjective expectation of privacy.

Second, the trial judge found that "Officer Harrell [s]earched the contents of the cell phone until he found the photograph he sought." Based on that finding, the court of appeals held that Harrell "had to pull up or scroll through the information imprinted on electronic chips to uncover the photo. It was not exposed to anyone happening to touch the item . . . ."[19] However, the record does not support the conclusion that the officer "had to pull up and scroll through . . . information." All that the record reflects about Harrell's manipulation of Granville's phone is that he "looked at" the phone, "found" the improper photograph, and somehow "retrieved" the photograph by "print[ing] it out directly from the phone." I agree that when an individual takes steps to ensure that the object of police scrutiny is not readily visible upon casual perusal, the subjective-expectation-of-privacy requirement may be satisfied. But in this case, the record demonstrates next to nothing about the nature of the search. Where was the photograph in question found within Granville's phone? Did it immediately appear when Harrell turned on the phone, or was it set as the phone's wallpaper or screen saver? Was the photo in an obvious location, or hidden in a folder or otherwise made less accessible to an intruder? I pose these questions not in an attempt to define how one maintains a subjective expectation of privacy in a cell phone, but merely to highlight the

---

[19] *Id.*

present record's lack of factual development. The record does not reflect anything about the location of the photo inside Granville's phone or any other facts that weigh in favor of finding a subjective expectation of privacy.

Bound by precedent from this Court and the Supreme Court and the bare record presented in this case, I believe we are constrained to conclude that Granville failed to demonstrate that he exhibited some conduct reflecting a genuine expectation of privacy in the contents of his phone. As such, he failed to meet his burden and prove a reasonable expectation of privacy therein.

## THE MAJORITY OPINION

The majority opinion, however, does not follow the clear guidelines of the Supreme Court in reaching its decision. The majority does initially recognize that Granville prevails if he can establish both an objective and a subjective expectation of privacy in the contents of his phone.[20] But it stumbles when it attempts to define what constitutes a "subjective" expectation of privacy. Instead of reviewing the record to determine whether Granville exhibited affirmative conduct reflecting a subjective expectation of privacy in his phone, the majority concludes that Granville retained a subjective expectation of privacy in his phone based solely on the fact of his ownership of the device and the inherent nature of cell phones.[21]

---

[20] Majority op. at 7–8.

[21] *Id.* at 25.

The majority's determination of what constitutes subjective expectations of privacy is predicated upon the proposition that "the object of the search makes all the difference"—essentially an adoption of the court of appeals' assertion that "a cell phone is not a pair of pants."[22] The majority rationalizes its decision by stating that "courts commonly find that a person has a legitimate expectation of privacy in the contents of his cell phone because of its ability to store large amounts of private data both in the cell phone itself and by accessing remote services."[23] This generalization conflates the Supreme Court's distinction between the objective and subjective requirements of the Fourth Amendment standing test. I cannot agree that ownership of a particular type of property deemed "special" by a reviewing court means that a defendant automatically enjoys a reasonable expectation of privacy therein. Indeed, what kind of "special" treatment cell phones should receive with respect to the Fourth Amendment is hotly disputed. For example, the First Circuit Court of Appeals' opinion *United States v. Wurie*, which figures prominently in the majority opinion, is pending review in the Supreme Court.[24] Presumably, the Court has granted certiorari to address the differing positions courts across the nation have adopted when tackling this

---

[22] *Id.* at 22; *see also Granville*, 373 S.W.3d at 227.

[23] Majority op. at 11 (quotation omitted).

[24] *United States v. Wurie*, 728 F.3d 1 (1st Cir. 2013), *cert. granted*, 82 U.S.L.W. 3104 (U.S. Jan. 17, 2014) (No. 13-212).

sensitive issue.[25]

The majority spends a significant amount of time discussing how cell phones both contain vast amounts of private data in and of themselves, and how they can be used to access additional data via remote services and other devices. It is concerned that "[t]he potential for invasion of privacy, identity theft, or, at a minimum, public embarrassment is enormous."[26] Ultimately, I share those concerns and agree that the ubiquity of cell phones and the vast amount of personal data that is commonly stored or accessible therein establishes that society is prepared to accept an expectation of privacy in the contents of a cell phone as legitimate. After all, this second prong of the standing test—which essentially "legitimizes" a defendant's subjective expectation of privacy—necessarily looks to "sources outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."[27]

But the fact that cell phones potentially contain vast amounts of private data, by itself, does not automatically result in a finding of a reasonable expectation of privacy in every

---

[25] *Compare id.* at 6 (because of the unique nature of cell phones, a bright line rule must be crafted, forbidding searches incident to arrest of cell phones) with *People v. Riley*, No. D059840, 2013 WL 475242, at *8 (Cal. App. Feb. 8, 2013) (not designated for publication), *cert. granted*, 82 U.S.L.W. 3082 (U.S. Jan. 17, 2014) (No. 13-132) (when a cell phone is found "of the person" of an arrestee, it may be freely searched incident to arrest); *United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007) (cell phones are no different from other containers and therefore may be freely searched incident to arrest).

[26] *Id.* at 12.

[27] *Rakas*, 439 U.S. at 143 n. 12.

case. Mere possession of an object does not automatically confer Fourth Amendment standing upon the possessor. In *Villarreal v. State*, a case involving the search of a house, we stated that "whether the accused had a property or possessory interest in [a] place invaded" was only one of many factors to be considered when making a determination of whether a defendant had established a reasonable expectation of privacy.[28] As stated above, in order to prove a subjective expectation of privacy, a defendant must have engaged in affirmative conduct exhibiting that such an expectation existed.[29] Making possession the deciding factor in a subjective-expectations analysis makes even less sense in a case such as this, where Granville's expectations of privacy are necessarily lessened by his incarceration—when the phone was searched, Granville did not presently possess it, and he knew that it was in the hands of law enforcement officers who had the means, if not the legal right, to search it for incriminating evidence.

Despite these constraints on possession as a deciding factor in a subjective-expectations analysis, the majority has hinged its entire analysis on this one element. The majority has pointed to no evidence that supports a finding of a subjective expectation of privacy, other than the fact that Granville owned the phone in question. Indeed, it goes so far as to imply that Granville automatically enjoys a reasonable expectation of privacy in his phone—solely on the grounds that he owns it—by stating that a person may "lose" his

---

[28] *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *see also Rakas*, 439 U.S. at 143 n. 12.

[29] *Bond*, 529 U.S. at 338.

reasonable expectation of privacy when he abandons a phone or lends it to another.[30] By so stating, the majority mischaracterizes the burdens imposed by the Fourth Amendment's standing doctrine. The burden is on the defendant to prove a reasonable expectation of privacy, not on the State to disprove that such an expectation exists.[31]

To reach its conclusion, the majority must get around *Oles*. In that case, this Court clearly held that the burden is on the defendant to establish subjective expectations of privacy[32]—a far cry from the majority's conclusion that ownership of a cell phone alone bestows automatic standing to challenge a Fourth Amendment search. The majority attempts to distinguish *Oles* by limiting its holding to clothing alone, but can cite to no authority that justifies this limitation.[33] Instead, the majority relies on Judge Keller's concurring opinion. Judge Keller stated that she would have decided *Oles* on the basis of a variation of the plain view doctrine—that is, a reasonable expectation of privacy does not exist when a space is routinely exposed to the public, even where a search results in the discovery of information "that a naked-eye examination would not give them."[34] The majority applies this reasoning to the search in this case, indicating that police would have been free to analyze the exterior

---

[30] Majority op. at 12–13.

[31] *See Mancusi v. DeForte*, 392 U.S. 364, 368 (1968).

[32] *Oles*, 993 S.W.2d at 110.

[33] *See* Majority op. at 22–23.

[34] *Oles*, 993 S.W.2d at 111 (Keller, J., concurring).

of Granville's phone, but not the phone's contents, which were hidden from the public eye.[35]

What the majority overlooks in its analysis is that, once again, a subjective expectation of privacy does not turn on what is or is not observable by the public. Such a consideration could only be one factor among many in either the subjective or objective prong of a reasonable-expectations analysis. What is missing from the majority's analysis of Granville's subjective expectation of privacy is a consideration of the totality of the circumstances—a consideration required by our precedent and by the Supreme Court.[36] And in this case, the record before us does not provide us with any evidence that Granville affirmatively exhibited a subjective expectation of privacy in his phone beyond the fact that he was its owner. If the majority believes that *Oles* was decided in error, it should say so and explain why—instead of conforming to the view of a concurring opinion that, at the time, received the vote of no judge except its author.

## CONCLUSION

The majority's concerns about potential abuse by law enforcement are well-founded. But the majority's resolution of this case has no basis in the law. The fact that a defendant's situation reflects a compelling public interest is not a sufficient reason to gloss over the

---

[35] Majority op. at 23.

[36] *See, e.g.*, *Bond*, 529 U.S. at 338 (analyzing the defendant's interaction with his bag, which was later searched by law enforcement, to determine whether he exhibited subjective expectations of privacy therein); *Threadgill v. State*, 146 S.W.3d 654, 660–61 (Tex. Crim. App. 2004) (finding that the defendant did not meet his burden when he could point to no evidence illustrating a subjective expectation of privacy).

Supreme Court's clearly articulated constitutional rules. Where the record lacks any evidence demonstrating a defendant's affirmatively expressed expectation of privacy, we cannot draw inferences or conjure up evidence to reach a desired result. I feel constrained to dissent.

DATE FILED: February 26, 2014

PUBLISH